Good afternoon. May it please the Court. Lisa Jacobson, Deputy Attorney General for the Respondent. First, we'd like to reserve 10 minutes of our 30 minutes for rebuttal. Would you keep your eye on the clock? Yes, Your Honor. I'll try to remind you to. The District Court erred in finding Deere satisfied its burden of establishing Strickland prejudice. In 2009, the District Court implicitly found that Deere had not satisfied his burden of establishing relief on any of his incompetency-based claims. Specifically, the District Court found that the record was inconclusive about the nature and degree of Deere's mental illness and that the question still remained whether Deere had the ability to assist counsel or whether a mental disease precluded him from doing so. Are you arguing that the District Judge is bound by your reading of that order and that was the end of the game no matter what else she later found? The District Court, yes, essentially we're arguing that there was no just reason for the District Court to change its opinion between the issuance of the 2009 order where she implicitly found that Deere had not satisfied any of his competency-based claims and 2010 because the state of the evidence remained unchanged. Your word right there, I think, was the right word, where she implicitly found. Found may not be right, but implicit is certainly correct. And is the District Judge bound by the statements that you made or if her statements are clear that there wasn't enough evidence, I'm not sure that's right, can't she change her mind? A court can change its mind about anything before a judgment is final, but it's got to be just to do so. And it was not just to do so in this case. The District Court didn't issue the 2009 order on the heels of the evidentiary hearing. It came almost two years after the evidentiary hearing where eight witnesses testified and the parties introduced more than 40 exhibits, and more than one year after, Deere submitted his final reply brief. So the District Court had ample time to mull over the evidence, the arguments of the parties, and the law when it issued the 2009 order. And nothing changed between 2009 and 2010 except that Deere refused to participate in the court-ordered competency evaluations. I'm reading from the District Court's order. She writes, But the evidence as it stands offers no conclusive understanding of the nature and degree of petitioner's mental illness. The word conclusive there suggests that what the District Court wants is evidence by which she can be more certain. But if we're talking ineffective assistance of counsel, the only thing that needs to be shown is a reasonable probability sufficient to undermine confidence in the outcome rather than something that is conclusive. Yes, Your Honor, that's true. But a more conclusive understanding of the nature and degree of Deere's mental illness would have allowed the court to answer the question that still remained in 2009, which was critical to the Strickland analysis and the actual competency claim, which is whether Deere had the ability to assist counsel or whether a mental disease or defect precluded him from doing so. Let's suppose that she can change her mind, okay? I know that's not your position. But let's suppose she's thought about it overnight, thought about it over a couple years, and has re-weighted in her mind. Tell us why her ultimate conclusion is wrong. The reason why her ultimate conclusion is wrong is there's two reasons. First, if counsel had requested a 1369 hearing or had expressed a doubt about Deere's competence in State court, what would have happened is the court would have appointed two experts to evaluate Deere, and then Deere would have had either a court trial or a jury trial at which he would have had to prove by a preponderance of evidence that he was actually incompetent. No reasonable jury or court would have found Deere incompetent based on the evidence presented at the evidentiary hearing, because the only two experts who actually evaluated Deere were handpicked by the defense. And there's no reasonable probability a jury would have found in 1982 that Deere was actually incompetent based on a mental disease that wasn't recognized in 1982, and that, at least as of 2009, was still not recognized in the DSM-IV, and that's that fixed idea of death. And the second reason that the district court was wrong in granting habeas relief was that she didn't address the actual incompetency claim. And had she addressed that actual incompetency claim, which we believe was part of the letter and spirit of this Court's remand, it would have found that Deere was, in fact, incompetent when he pled guilty. That would have his Strickland claim necessarily would have failed. Let's assume we agree with you. I'm not saying we do. Let's just say we agree with you that she didn't do everything we asked her to do in the previous mandate. What would you have us do about that? We would have you remand it to the district court in order to address the actual incompetency issue and to reconsider the Strickland claim in light of the determination of the actual. That remand took about 10 years. Is that what you would have us do? No, actually. Thank you, Your Honor. We think that this Court can decide that issue based on the record before it, that Deere had not. Well, I mean, if you're right that we asked her to define whether or not he was competent and she didn't do it, we're left with we asked her to do something she didn't do. You're saying remand it, and this thing just marches along. Remand it and finalize the tentative findings she made in 2009 that he was actually incompetent. Counsel, in your view, does the district court still have the option of perhaps sending Mr. Deere to a Federal institution for evaluation? The district court could, if the district court is inclined to give Deere yet another opportunity to provide additional evidence to remedy his failure of proof, the district court should do that. But the district court can and should decide based on the evidence that was already presented, and Deere, because Deere had an ample opportunity in that four-day evidentiary hearing and with all the exhibits that were presented to establish his burden of proof of Strickland error and the actual incompetency claim. So the district court could do that, but there's no need to. The district court should deny on the record that's before. Let me ask you this. This is in terms of what we directed the district court to do. I'm looking at the last paragraph of our order, third sentence of that last paragraph. Are you with me? We remanded the district court. Are you with me? Have you found it? Yes. Okay. We remanded the district court with directions to hold a hearing on Deere's claim that he was incompetent to plead guilty and to reconsider the petition for writ of habeas corpus as to the claims premised on that contention. Claims premised upon that contention, I think, includes the IAC claim. Yes, Your Honor. So I think she decided a question that we sent back to her. She didn't decide the straightforward question of competence simpliciter. But given her decision on IAC, if she's right, she doesn't need to get to competence. Isn't that right? Our position is that she should address the actual incompetency, and you can see that. All right. Let me ask it a different way, because I think we'll end up agreeing. We may not. Is IAC in 82 and failing to ask for a competency determination included within the remand? Yes, Your Honor. If the district judge is right that there was IAC under Strickland, both as to defective performance and as to prejudice, does that make it unnecessary to reach the question of competence simpliciter? The district court should have to reach that question. No, I didn't ask that question. Is it therefore unnecessary in the sense that is the IAC claim decided as the district judge decided it No, I don't think it is sufficient to dispose of a case. Because if you have – if you consider two cases where the evidence is identical and in one case the court reaches the actual incompetency claim first and decides the defendant was actually – or the habeas petitioner was actually competent when he pled guilty, there would be no need to address the Strickland claim at that point, because the Strickland claim would fail, as this Court found and Boyd and Davis and other circuits have found. That's consistent with the well-settled principle that counsel is not ineffective in failing to make a meritless motion. So you take that same case and maybe the habeas petitioner either only raised IAC or the district court did what the district court did in this case, and that's only reached the IAC claim. The defendant would – or the habeas petitioner would get the benefit of habeas relief and if this Court's – if the district court's order were to go and corrected a new trial, even though in both cases the habeas petitioners received the same level of representation by counsel. In one case – You know, maybe it's better for us to – I mean, we've been dancing around with all of the procedural things that I think are real, but why do you think that looking at the evidence that the district judge had, assuming that she's allowed to discuss or analyze IAC, why do you think she's wrong in the decision that she reached on the merits? She's wrong for two reasons. First, we don't think the – if, as I said earlier, counsel had asked – expressed a doubt about Deere's competence, the jury would have heard evidence that included evidence from either a neutral evaluator or somebody maybe what ended up happening in this case or what was proposed at one point, an expert pick from the defense and an expert pick from the prosecution. But what you had here was somewhat lopsided evidence, because the only two experts who testified that were able to evaluate Deere were those that were retained and handpicked by the defense. You're referring to? Drs. Rosenthal and Dr. Jones. And Dr. – Are you talking about 82 or 86? Doing the – what was before the district court in terms of the evidentiary hearing. Okay. I thought you were getting to there was no ineffective assistance in 82 because – No ineffective assistance in 82 because – Because he had two doctors, Dr. Jones and Dr. Bolger. No ineffective assistance in – no Strickland prejudice based on – if the jury had before it the same evidence that was presented at the evidentiary hearing. There were two doctors who examined him in 82. Yes, Your Honor. Jones and Bolger, they both essentially say he knew where he was, he had no thought disorder, that sort of thing. Yes, Your Honor. And that would – if those were the two doctors that had testified at the evidentiary hearing, then absolutely – or at the competency hearing, then absolutely there's no reasonable probability that the jury would have found Deere. Well, wait a minute. As to Dr. Jones' testimony, he prepared a report based upon his examination of Deere. Yes. But he testifies to the district court that he was not asked whether he was competent to plead. And he says, my opinion had I been asked is I would have said he was not competent to plead. He did not – he said he would have in essence said he was incompetent to plead. That's what he says in front of the district court now. Yes. And he says, I wasn't asked that question in 82 and I didn't answer that question in 82. Correct. But the attorney disputed that, didn't he? Yes. Didn't the attorney say he did ask him that question? Well, no, the attorney said he did not – that normally what he does is just ask someone for a competency or a psychological evaluation. And he doesn't – he didn't specifically ask him to address the issue of actual incompetency. But Attorney Jones had worked with Dr. Jones in the past and he expected that if Dr. Jones had a doubt about his competency that he would have alerted Attorney Jones to that. And he did not recall Attorney Jones ever alerting him to that. And he testified that if Attorney Jones had alerted him to – If Dr. Jones – I'm sorry. I should just probably stick with their titles. If the doctor had alerted the attorney about incompetence, this was something that attorney – the attorney would have followed up on. And this has definitely consisted with the attorney's actions in the case. Yes. The doctor's testimony was not – it was true then. The doctor's testimony was true that he wasn't asked for a competency evaluation. He was not asked for a competency evaluation. He was asked for a general psychological evaluation. And there's an additional step that – I don't know what that means exactly, a general psychological evaluation. He apparently gave him some tests. Yes, Your Honor. Says the man has no thought disorder. He's oriented as to time and place and person. He has a diagnosis of a personality disorder. And as far as Axis I diagnosis is, he's maladjusted, I guess. Is that what he diagnosed him as? He has an adjustment disorder? Yes. Which means he reacts badly to stress. Yes. So what more is there in a – if that's a general evaluation. What's his subspecialty and the competency? What's missing here? Dr. Jones testified that there was one additional step that he didn't do, but he didn't identify what that one additional step was. But there is no indication in this report. I mean, what I'm saying is if you have a medical diagnosis. Yes. And if you have a – including there's no psychosis. Yes. He's oriented. I'm not sure what else is missing. Based on Dr. Jones' report, one would infer that Deere would be able to assist counsel in the conduct of his defense. I mean, if he then says, you know, I did find the thought disorder. You know, the man thinks he's the pope or, you know, he's, you know, whenever he killed these people to expel L&M from the alphabet or something like that. You know, we've got something to pursue, but I'm not sure I understand what the difference is between a general psychological evaluation that yields these diagnoses and the competency. I guess I'm just asking the same thing over and over again. There's not much – his report actually is a little more thorough, if I recall, than Dr. Bulger's, but they're very similar in that they're, you know, a discussion of his medical history and a diagnostic impression. The only difference is that Dr. Bulger goes on to make the conclusion that he's capable of assisting counsel. And Dr. Jones did not specifically opine on that issue. Right, right. But based on Dr. Bulger's report and Dr. Jones's report, no reasonable jury would have found Deere incompetent based on these reports. In California, does the jury make the finding of competency or does the judge do that? A defendant has a right to a jury trial on the issue of competency. Does the judge make an initial determination? The judge – there's two ways where you can get a competency evaluation. Either counsel raises a doubt or the judge can order competency evaluations. Ultimately, the jury decides that. In Arizona, the judge decides whether somebody's competent to stand trial. Ultimately, it's a jury. It can go to the jury. Now, let's get back. In a sense, this is procedural, but I think it's important. If we're talking IAC, Deere does not have to establish that a jury would have found it more probable than not that he was incompetent. He needs merely to show that there is a, quote, reasonable probability, which is not the same thing. Strickland makes it very clear this is not the same thing as more probable than not. There's a reasonable chance sufficient to undermine confidence in the outcome. Am I misquoting Strickland? No, but I would frame the Strickland prejudice standard slightly different in that he has to show reasonable probability that a jury would have found that Deere had satisfied his burden of establishing by a preponderance of evidence that he was actually incompetent. I agree with you. And Richter clarified that. Or the fact finder, whether jury or judge. We're not sure, I guess, if we'd had competent counsel, whether the request would have been for a jury or for a judge. So I guess we just have to say fact finder. Yes, Your Honor. Okay. And Richter makes clear that the difference between reasonable probability and actual reasonable probability and preponderance of evidence is pretty close. I'm with you on that. Yes, Your Honor. But I think based on the evidence that was available in 1982, the two reports, there is no reasonable probability that a fact finder would have found Deere. Okay. Can we discuss on it, because your time is running, I'm quite concerned about IAC in 86. The evidence that we have in the record is that Judge Metheny was not doing very well in 86. We have the declarations from three lawyers who practiced in front of him at that time. We have the newspaper reporting and the survey and then his letter he writes back. And we have the transcripts of 86 in the first place. I read those transcripts. He's not tracking. I do not want to be a lawyer appearing in front of that judge because he's not following the arguments. Do you agree with that characterization? I do not agree with Your Honor's assessment. And neither does the California Supreme Court. No. Or Judge Taylor. I read through the transcripts the first time without that issue in mind, and nothing popped out to me. Nothing unusual popped out to me. And I read through it a second time after I received this Court's order on Friday, and I don't think that the judge's comments establish or suggest that he was mentally incompetent. What does this have to do with the declaration of the lawyer, for example, who was appearing in front of him in 86 in what had started out as a small claims trial but then was de novo in the Superior Court, supposed to last a day, and now we're on the third day. The judge comes down off the bench, shakes hands with everybody, shakes hands with the people sitting in the pews, says he thinks everybody's a good Christian, and dismisses the case. And the lawyers, both of them, then go to the presiding judge and tell him what happened, and the presiding judge says, oh, listen, I'll try the case myself, and he does. That sounds like an incompetent judge to me. Is this from the Huff Declaration or the Kennedy Declaration? I'm sorry, because I looked at the three declarations and what Your Honor just described, something at an 86 hearing is not ringing a bell with me. This is not a hearing in Deere's case, but this happened in 86. That is Mark Sullivan, ER 8283. I'm going to have to check. I've just summarized. That's what Sullivan says happened. That the judge came off the bench and shook everyone's hand? The judge got disgusted that a lower court small claims case that was supposed to take a couple of hours went on for several days. And at the end of the several days, he blew his stack, apparently got off the bench, shook everybody's hand, and dismissed the case. And says they're good Christians. Just like Judge Fletcher said, the lawyers then complained to the presiding judge, and the judge took it over. Now, what do we do with that? It shows impatience. It shows that he had a bad day. It shows he blew his stack. It doesn't show mental incompetence. It's not enough to show. We have one of the surveyors who's responding to the newspaper. He is in a complete fog, doesn't know what's going on, can't make a decision, only wants to talk about World War II, playing football for Nebraska. We have the lawyer who testifies that in the cases, this is later, he gets down off the bench, says assume the position, gets in a three-point stance like he's playing football and says, I want to knock you around. The lawyer goes to the presiding judge and says, what's going on here? And they say, well, this is an ongoing problem. He keeps promising to resign, but he never does. Okay. That part of the declaration was hearsay. And the 1988 part about what the presiding judge told this individual about, that the judge kept saying, Judge Matheny kept saying he would be retiring. I'll just read it to you. I chastise these two judges for letting things get so far out of hand. They conceded it was a difficult matter, appeared to regret things they'd gone on so long. That's not hearsay. That's what they told him. I'm sorry, who's the declarer there? That's Michael Kennedy. But Michael Kennedy was talking about what the judges told him about, this is an ongoing problem, and he keeps saying he's going to. I'll take a look at that declaration again. What Matheny told them is hearsay. I'm with you. But what happened in 88 doesn't necessarily establish that the judge was incompetent in 1986, the three-point stance. Sullivan says, In a civil trial in 84, opposing counsel and I found ourselves bewildered by his strange rulings and offhand remarks. For example, despite the fact that my wife and I had never had any personal relations whatsoever with Judge Matheny, he told jurors in the case that my wife constantly complained to him that I stayed out too late at night. This is 84. There's some question about the guy who has Alzheimer's that's progressing. How serious it is in 86, I mean, that's a matter of debate. He resigns from the bench with Alzheimer's. He dies sometime later. We don't know for a fact that he did have Alzheimer's. We have a declaration filed by Habeas Counsel about a conversation she had with someone who said that they were the judge's wife in 1993, that he had some sort of Alzheimer-type illness. That's seven years after the 1986 penalty trial. And Deere's counsel didn't come forward with any examples where people actually moved to recuse the judge based on his mental incompetence. Well, we have one other declarant saying, well, the government didn't like to recuse him because he always favored the prosecution. But the government wasn't the only one that was representing, that was appearing before the judge in 1986. We also had the independent attorney who was appointed to present mitigating evidence, Attorney Landau, and he did not move to recuse the judge either. That's why it's an IAC claim. Well, Attorney Landau, the IAC claim, my understanding is that Attorney Jones didn't move for it. Let's not talk about Landau or Attorney Jones. Let's talk about the lawyers here now. Did any of these lawyers ever show the affidavits of Kennedy, Sullivan, Huff to any of the psychologists and say, what does this tell you about the man's psychological makeup? Not to my knowledge. Is there anything before Judge Snyder? You know, they have Judge Dr. Rosenthal. They've got a couple of other psychologists. Any psychologists look at all these things that Judge Fletcher is talking about and say, boy, this is evidence of Alzheimer's in 1986, anything like that? No, Your Honor. I'm not talking about Landau. I'm not talking about Mr. Jones. I'm talking about habeas counsel. No, Your Honor. There's been no medical expert affidavit. Have they asked for a remand for an evidentiary hearing on this? Yes. And probably the reason why they didn't get one is because they didn't have any medical evidence. They didn't need to have a hearing to show these documents to a psychologist, did they? They didn't need to have a hearing, no. And that's why they didn't deserve a hearing is because they didn't bring any. Did they ask for a hearing? They asked for a hearing, but it was properly denied because they didn't come forward with any declarations from a doctor or any medical records that really showed that the judge did, in fact, have Alzheimer's. And I think that I have very little time left. We've got four minutes left. Okay, thank you very much. Thank you. May it please the Court, Michael Satras on behalf of Ronald Deere. Yes, Your Honor. Let me maybe quickly, as much as possible, dispose of the question about ineffective assistance of counsel as to challenge to the judge in 86. None of this, Your Honor, was expressing some significance of the fact that none of this came before Judge Snyder or any effort before Judge Snyder. The remand was limited to the competency of defendant and claims related thereto. No, I'm talking about no, I'm sorry. You may have misunderstood. When your side submitted the affidavits of Taylor Huff, Michael Kennedy, Mark Sullivan, Diana Samuelson, that was done earlier on in front of Judge Taylor. Yes. Now, were they accompanied by any medical declaration that explains any medical significance to these things? No, they were accompanied by a motion for discovery. No, I'm asking you, was there any medical affidavit with it? No. There was a motion for discovery and a motion for evidentiary hearing in which we asked to be able to develop this evidence. Why couldn't you have shown those things to Dr. Rosenthal? Because we needed more information to investigate. What do you need? We need the evidence. You can't say, Dr. Rosenthal, look at these and tell me what you think of them. Well, a lot better would be the records from the medical records of the judge. And wouldn't you have been better off if Dr. Rosenthal says, yeah, this is evidence of a disordered mind. I think you have reason to go get open up his medical records. Well, it seems to be fairly, for purposes of getting discovery, evidence on its face that this deserved to be looked into and much more dispositive than anecdotal evidence would be getting the record, getting complaints from. The bottom line is you, for whatever reason, accumulated these anecdotes from the lawyers, but you never asked a medical person to look at these anecdotes and see what the medical significance of it was. No, because we needed more information from our point of view, such as. To show the expert. Yeah, such as the medical records of the doctor, which would have been a lot more definitive and complaints to the state bar and other things like that. All of that was cut off in discovery, never mind getting an evidentiary hearing on the issue. If there's, if we agree with you, then you would have us remanded for an evidentiary hearing so this could be further developed. Is that what you're. I don't even think that needs, that would be needed to be done for actual incompetency of the trial judge, just as it was done for actual incompetency of the defendant. But here we have a claim of ineffective assistance of counsel where we had claims that the judge was biased and incompetent. There was no reasonable attorney in Mr. Jones' position in 1986 would have allowed Judge Matheny to hear this case again because he had already shown he was, he was disposed to sentence Deere to death. He, the attorney had a right under the Code of Civil Procedure on, once it came back to him in 86, to challenge Judge Matheny without even having to show that there would be a, that he was actually incompetent or that he was actually biased. Would it be an automatic removal? Yes, a peremptory challenge. That was pursuant to a statute that had just passed in 85 and then effective January 1st, 86, that allowed a judge a peremptory challenge where there had been a reversal. Now in Nevada we have that, but it's only in the first instance. You can't do it once the judge has joined the merits of the case. But you're saying that in California, when it comes back on remand, you have a fresh opportunity? Yes. There was an amendment that had just been passed. Otherwise, it is just as Your Honor says. But, yes, otherwise, to establish, you know, actual bias or actual incompetence, it would require a remand so that we can get to the bottom of this. I mean, we, this case is also one of actual innocence. And the judge, the district judge was wrong, Judge Taylor, then when he said, oh, no, a claim of a lack of mental state, that's legal innocence. It's not actual innocence. Well, he's dead wrong there. And when you're saying actual innocence, you're not saying he didn't do the deed. No. You're talking mental state. And that's where I think Judge Taylor got confused, because he had done the actus praeus. He did the deed, so there can't be actual innocence. The difficulty is there is nothing in the record that came anywhere close to showing that there was a recognizable mental condition that would allow the defendant to say he didn't have the requisite mental state. What was the evidence in the record regarding the mental disability that would show the judge that he didn't have the mental state? Well, a number of them. The PTSD, the depression, the disassociative state, which is what Dr. Jones said when he was not on remand, but when he was talking about innocence, he had the opinion that, and the alcohol disorder, that there was missing premeditation and there was an absence of malice, and that Mr. Deere had gone into a dissociative state. But did any of those rise to the level of the legal definition of insanity? Not insanity, but necessarily, but it rose to the legal definition or fell short of the legal definition of premeditation and deliberation necessary to establish a capital murder. Now, so which of the doctors said that he didn't have the ability to deliberate sufficiently to premeditate? Dr. Jones did. The one who examined him at the time of the entry of the guilty plea. Did Dr. Bolger also testify for Mr. Deere? And Dr. Bolger in 1986, for what his opinion is worth, which isn't much, I'll grant you. Well, I mean, he's charged with three murders, and the judge finds two lesser counts. The judge finds two lesser counts right there without any of the psychological evidence. Well, you had Bolger's evidence. No. Bolger said there was diminished responsibility, diminished capacity in 1986 at the penalty phase. But he didn't try to say that that went back to 82. Oh, no. He's talking about the crime, at the time of the crime that was presented by the quote, unquote, mitigation attorney when Attorney Jones refused to present any evidence. So this is a unreliable verdict, no matter what vantage point you take, whether the – whether it's a quote. What is the unreliable verdict? The unreliable verdict is there was never any fair truth-finding determination made, and it all got shortstopped. What are we referring to specifically? You say an unreliable verdict. Would you tell me specifically what you're referring to, the failure of the judge to reduce it from first to second on all the counts? Well, failure to even have a real trial, because Deere didn't permit it. It's an unreliable verdict because it starts out with an incompetent defendant. And that gets worse because you have an ineffective assistance of counsel. But why was he incompetent in 82? Deere? Yes. In all the ways that the experts said he was. Well, the two experts who saw him in 82 said he was oriented times three. You need more than an orientation. I'm just going down the list. That's one thing. He's not – he doesn't think he's in Mars. He knows who he is, where he is, when it is, that sort of thing. Yes, but – I'm checking down. So he doesn't fit that box. In what way was he incompetent? He was unable to rationally assist counsel in the defense against the charges. Okay. Let me stop you there. What was the defense? The defense would have been – Did he have an alibi? Was that his defense? No, mental state. Even Attorney Jones said there was a substantial case. Okay. Now, am I correct? He entered a plea to an open charge of murder, and the degree of murder wasn't established until another separate proceeding. Is that – Right. Okay. And that was unreliably arrived at. Okay. So am I hearing you correctly that where Mr. Deere was, as you see it, unable to assist in his defense, it was in whatever degree of murder it was? Yes, he was totally unable to assist. In fact, even – But the underlying plea was not defective. It was – Yes. Why? Why? For all of the reasons that the district judge in this case found established a reasonable probability of his incompetence, for all of the reasons that the experts all said that he was incompetent, Dr. Jones, Dr. Favazza. I mean, even in answer to Judge Fletcher's question, you just said there's no doubt about the fact that he shot and killed these people. Right. Where the game is played is on what degree of homicide this was. Right. Okay. There was murder at all. That's why I say the underlying plea doesn't seem to be what's challenged. What's challenged is the proceeding over the degree of homicide. No, it's a plea of murder. There was no murder here. There was diminished responsibility. There was a very defensible case that this was manslaughter, and it certainly was not a murder one. If I can interject here, the decision to plead guilty at all is a decision that I'm going to plead now, determine the degree of – assuming he's competent – to determine degree of murder or homicide thereafter. It's possible that someone determined to resist the charge would, at that stage, have fled not guilty. Right. So the question of competency to plead is what's his state of mind as he decides to plead guilty instead of pleading not guilty going forward in various ways that would allow him then to do – hang on. And the question of incompetency to me, at least as I understand it, from Dr. Jones, from Dr. Rosenthal, from Dr. Favazza, and Dr. Stewart, all is not whether the man was insane, but whether in the circumstances in which he then found himself, the stress of that situation then, whether he was incompetent at that time. Not whether he was nuts or whether he knew where Mars was. It was questions, what was his state of mind then? Was he capable of making a rational decision to plead in 82 when he did it? And I've got four doctors who say he was not competent. Right. But did the district court make a determination that he was incompetent to plead? No. The district court found that it did not have to make the ultimate decision of whether he was incompetent because there – what the district court found was there was no need to go there because she found he was entitled to relief based on the claim of ineffective assistance of counsel. Because we have deficiency. Nobody is challenging that. And the question is prejudice. Was there a reasonable probability that a professional attorney could have convinced a California jury in 82 that Mr. Deere was not competent? And by that you mean he was not able to formulate the intent to premeditate. No. No, that's innocence and guilt, that he was not able to. But you are arguing that he was – that he was innocent because he couldn't premeditate. Well, that's true. What I'm saying is that this – these proceedings misfired in every way in the trial court in this case. But I'm trying to get you to focus specifically on the legal issue that permits relief on your behalf.  They're saying that the proceedings misfired doesn't help me in terms of, you know, really pinpointing what's the legal issue and what's the case authority that supports your issue. Okay. So I was dealing really – I was jumping ahead to the other issues that were left unresolved by this Court. The issue before this Court is did – was there any error in the district courts finding that there was ineffective assistance of counsel? Particularly, I guess the only question is was there prejudice, that there's a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered. That's what this Court, this circuit, said last year in Stanley is the legal standard. Okay. You said there's a reasonable probability that he would have been found incompetent to stand trial. Yes. On what basis? On all of the basis. Tell me the strongest basis on which he would have been found incompetent to stand trial. Because as a result of a mental disorder, he was unable to rationally assist counsel in the defense of his charges. That's what four experts found in this case. The one expert who didn't find it made all kinds – gave all kinds of testimony and statements that actually supported the four, and it's what the district court found. This – we had – there was a whole hearing on this. It was complicated by the fact that Mr. Deere would – would not agree to be examined by the district. Not – not really. There was a whole evidentiary hearing. Every – both sides presented all the testimony that they determined was probative on the issue. The court later on its own motion, because it – it just wanted to be more certain. Well, no. The court – my reading of it was the court was of the view that there was insufficient evidence to make the call. No. Otherwise, the court would have made the call instead of putting – getting additional information. No. The court – the most – and the most that can be said about that order of the court, the court never said explicitly, and it's not even a fair inference that it was said implicitly. All what the – look, most you can read into that order of the court was that, hey, this is a close and difficult decision, and it's – has grave consequences certainly for Mr. Deere. So I want to make sure I have all the potential evidence that could – that may bear on this. Therefore, I'm going to permit further evidence to be taken. Mr. … Well, what do you think the court meant when it said the evidence as it stands offers no conclusive understanding of the nature and degree of Petitioner's mental illness? What was the court saying there? The court was saying it was not entirely clear conclusively. But you don't need a conclusive determination. You know, I – the court – what the court there was talking about is I think we have these four experts who have these overlapping definitions of what Mr. Deere suffered from, and so I would be interested in getting a little more clarity on the issue. Well, the court said the question remains as to whether Petitioner had the ability to properly assist. So at least in the court's mind, there was not sufficient evidence to answer the question. Well, that goes back to what His Honor said here. The court prefaced that with saying, hey, there's no question here that Mr. Deere is oriented to time and place. You know, he knows what's going on. He's not off on Mars. But my question, the question that needs to be determined is – and I forget now, Your Honor. I said the question remains as to whether Petitioner had the ability to properly assist in his own defense or whether his mental illness precluded him from doing so. Yes. That was the question before the court. And even after hearing all of the evidence. Right. She was struggling, no question about it. If I can interject, the way I read what happened is that the district judge was trying very hard to decide the question that was the centerpiece of our remand. She was trying to decide was he competent. And so she says at this point, I'd like some more evidence. I cannot conclusively decide why he's incompetent. She's unsuccessful in getting it because Deere won't cooperate. So she goes to the question that in a sense is easier, which doesn't require her to decide whether or not he was competent. She goes to the IAC question, which is was there a reasonable possibility that his lawyer, if he raised the question, could have convinced a jury or a judge that he was incompetent. That's how I read it. When she's there, she's trying to decide competence. And she bails on that question. Right. Which is why she then comes and does it as an IAC. And other courts have done exactly the same when they've been facing with both of those. One was the McCree one, I think, that this Court affirmed. And the district court says that in this case. It's easier to make the decision on whether there's a reasonable probability because the standard is a lower one. And remember, we're talking about a retrospective assessment of competence that's 30 years old. So it's hard to begin with. Thank goodness we have Dr. Jones' credible or qualified examination at the time. And so that's what allows. And the judge says, I put a lot of weight on Dr. Jones' findings and opinions in this case. And to what degree do we look at what the district judge did in evaluating the evidence that comes in front of her as a finding of facts to which we owe deference? Or to what degree is this a finding of laws to which we owe none? Well, the ultimate determination of reasonable probability of a more favorable verdict, prejudice, shorthand, is a legal determination. But in terms of who she believes and relies on. But all of the findings of fact that she made in support of that legal determination, that has to be shown to be clearly erroneous. And there hasn't been one finding of fact identified by the warden or the state that says, boy, this is not supported by the evidence. The judge got it wrong here. And that's why this is a case where there is no real assignable error in terms of showing a legal error in the ultimate finding of prejudice. And it all goes back. The only way the state can hang its hat is by saying that this earlier 2009 order made dispositive findings. As I read what she's done with respect to Dr. Jones, Dr. Jones who does give us a report, based on his examination contemporaneous with the plea. He examines Deere twice within a week. Once just before the plea, once right after the plea. Writes a report. He says to the district judge now on the remand at the hearing that we're now looking at, I wasn't asked to decide competency or to evaluate competency or to communicate it. I did, however, in my mind, have an opinion. And my opinion was then that he was incompetent. As I read what the district judge's order says, she believes Dr. Jones. Right. That in fact his view in 1982 had he been asked was he was incompetent. Now, that might or might not withstand analysis in the sense of was Dr. Jones right? But I think the district judge tells us that Dr. Jones is telling us the truth. Yes, she credits him. And he is credible. And I think what Dr. Jones was saying at the time in 82, yeah, I would have told him I had rave reservations, but of course he hadn't all the information he needed to do a competency evaluation. And then he gets further information up to the point of where he's testifying. And he says, yes, he's got an unequivocal opinion that Mr. Deere was incompetent. And as a result of a mental disorder. What basis, if any, do we have to disregard the professional opinion of Dr. Dietz? Well. Because he's obviously saying the opposite. It's a fact finder decision that's being made. You have contrary opinions. Which one do you find more credible? In fact, she found that much of the testimony of Dr. Dietz putting aside his opinion supported the opinions of the defense experts that indeed Mr. Deere suffered from a mental disorder that rendered him unable to assist counsel. So, I mean, that's what a fact finder does. That's why. Now, unable to assist counsel has an interesting meaning. Typically when you're in trial, what that means is the ability to communicate, to talk a little bit about, yeah, I recognize that guy. You know, I've never seen him before in my life or whatever. But at the pleading stage, pleading guilty stage, ability to assist counsel I think is the ability to rationally decide whether to plead. Because if you're going to plead guilty, you're not assisting in your defense. And if you can't make a rational decision to plead or not plead guilty, you're incapable of assisting in your defense. Right. So it's a different question from what, can I speak English? Can I recognize witnesses? Can I think rationally about various things that are factual? The able to assist in one's defense at the pleading stage is can I make a rational decision whether to plead? Right. Because we're talking about at the time of the plea here, was he able to rationally assist counsel? And rationally assist means plead or not plead. Making an informed decision and a rational decision to plead. Why couldn't he rationally conclude he wanted to take responsibility for what he did? Well, he could perhaps, you know, theoretically or whatever, but in fact, the experts found that wasn't what was driving his desire for the death penalty, his, his, his adamant desire to plead. It was a product of these mental disorders that was inviting the death penalty. Well, you know, I'm looking at this case, the Dennis case, 2000, where is it? 2004. Judge Reimer was writing for the court. She says, evidence showing that a prisoner's decision is the product of a mental disease does not show that he lacks the capacity to make a rational choice. It is not, it is the latter, not the former that matters. The question is not whether mental illness substantially affects a decision, but whether a mental illness, disorder, or defect substantially affects the prisoner's options. Where is it that he didn't appreciate his options here? Because he never rationally considered them because his, his mental disorder drove him to plead guilty. Well, I say again, the question is not whether a mental illness affects a decision, but whether it affects his capacity to appreciate his options. And capacity to cooperate with counsel. I didn't see that in there. What, what's the context of, of that? The habeas petitioner who does, who basically wants to volunteer, you know, for the death penalty. Okay. Well, that's a little different, too. But then it goes on to say it's the same standard, I think. But in any event. Yeah. His commitment. I'm trying to distinguish between, okay, the guy, the guy's got mental problems. Everybody agrees with that. And it may affect his decision, but it doesn't, it didn't affect his capacity to understand what was going on. And that's the, that's what Judge Reimer is talking about here. If he knew what the options were. I mean, if he, if he was competent enough to know what the options were and selected an option, then why wouldn't that be sufficient competency for purposes of the plea process? Because of the free will that's involved there. I mean, if in fact he says, I want to plead guilty because I feel so, so wrong about what I did, and that's, that was the trial counsel's, that would have been the only time in his life he ever did something like that. That's not what's going on in this case. What's going on here is, as the experts found, was a mental disorder that's, that's not leaving him the option to plead not guilty. That's foreclosing that as a reasonable option. And that's basically rendering him unable at all to cooperate with counsel in defending against the charges or deciding whether to, to enter an informed plea of guilty. I don't think I have anything further. Thank you. Very good argument. Thank you very much. Ms. Jacobson, I think you get the last word. You've got about four minutes and change left. Thank you. I've read the declaration of Mark Sullivan now, and it shows that the judge was definitely impatient at the 1986 hearing and made a comment which we really don't know much about in 1984. How many impatient judges do you know that come down off the bench and shake hands with the people in the pews saying, I'm sure you're good Christians? Have you ever seen that? No, Your Honor, I have not. And if you had seen that, what would be your response as an attorney? And the case was dismissed. I would think that was odd. Would you do as Mr. Sullivan and his co-counsel did, which was to go to the chief judge and say, something bad happened there, we would like an actual trial? And at which point the chief judge says, in fact, I'm going to give it to you. I mean, this is not merely an impatient judge. Let's just talk facts. We can decide what we want to do with it. But this is bizarre behavior. But what we have here are three declarations from attorneys. And we also have a 1986 transcript about what happened in this case. And what we also have is no evidence or no declarations from any attorneys who actually moved to recuse the judge based on his mental incompetence. Well, we have from Mr. Sullivan, he says, I resolve never to appear before him in the future in any criminal case of any importance. And, of course, we know the California law at that time, if you're coming in front of the judge for the first time, all you've got to do is pay for the judge. I mean, you don't have to get a recuse. You don't have to show incompetence. All you've got to do is say, I don't want that judge. Boom, you don't get him. I would suggest you not fight Judge Fletcher over these facts. This is pretty bizarre behavior. Yes. My question is, how do you impute that to Mr. Jones? How is he supposed to know about this? That's an excellent point, Your Honor. There's no evidence that Attorney Jones knew any of this. And what we do know from Attorney Jones' ---- Wait, wait, wait, wait a minute. Mr. Huff, I was aware of the penalty phase retrial ordered by the California Supreme Court. He was in the same public defender's office with Mr. Jones. Indeed, he's in the courtroom with Jones observing these proceedings. But it doesn't say that he told Mr. Jones, shared his opinion. Yeah, right. And Mr. ---- Sullivan is the one with the handshaking. Yeah. So what does Mr. Sullivan tell Mr. Jones? Nothing. Yeah, okay. That we don't know. Yeah. But everybody tells us, we know this from the survey and so on. This is well known. We have lots of this. This is well known in the courthouse. Mr. Jones ---- That is hearsay. That is well known in the courthouse. Reputation testimony is an acceptable exception to hearsay. Okay. It's clearly established from this that people are saying the reputation of the courthouse was that he was not tracking, that he was acting bizarrely. And to suspect that Jones doesn't ---- to say from this, we don't know that Jones knows, there's an easy way to find out. Let's have a hearing. Another hearing? Well, it's asked for. It was denied. But there's no declaration. They could have easily have submitted evidence from a ---- gotten a declaration from Jones. But they didn't get a declaration from Jones. How easy a declaration is to get from an attorney who's being accused of IAC? They could have submitted some evidence that other attorneys recused them. They asked for discovery. They asked for a hearing. And they were denied it, even though they've got a fair amount of evidence right here in front of us that this judge is acting bizarrely as early as 84. But it's a lot of the ---- the declarations also contain lay opinion evidence. And in the 1986 newspaper survey, it was ---- Lay opinion evidence is lawyers observing him in the courtroom behaving in a way that no judge behaves who's acting in his right mind. I mean, you've dealt with lawyers, judges all your life. We deal with lawyers. We deal with judges. This is not the way judges behave. But it's also a common experience that sometimes you may hear a reputation about a particular judge or a particular person, but your own experience is different from that. I see I'm running out of time here. We'd ask this Court to reverse Judge Snyder's order and reinstate the conviction and affirm Judge Taylor's order in its entirety. Thank you. I think I speak for the panel. I want to thank both counsels really for a terrific, terrific job on this case. Do I take it that this case had been to mediation without success? Are we at the end of the road on that? Yes, Your Honor. Everybody nodding yes. Okay. We've agreed on something. Okay. Thank you. All rise.
judges: Silverman, W. Fletcher, Rawlinson